UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Dennis Mayers, Nancy Ciccone,
and Elba Quinones

                          Plaintiffs,     CV-03-5837 (CPS)

   - against -                    MEMORANDUM OPINION
                                     AND ORDER

New York Community Bancorp, Inc., North
Fork Bank, Fleet Bank, MKM Acquisitions,
LLC, Arrow Financial Services, LLC,
Beth Israel Hospital, the law firm of Mel
S. Harris and Associates, The Hon. Judith
S. Kaye, as Chief Judicial Officer of the
State of New York, Jonathan Lippman, as
Chief Administrative Judge of the Courts
of the State of New York, and Diana L.
Taylor, the New York State Superintendent
of Banks,

                          Defendants.

----------------------------------------X

SIFTON, Senior Judge.

      Plaintiffs, Denis Mayers, Nancy Ciccone and Elba

Quinones, bring this action pursuant to 42 U.S.C. § 1983 against

Defendants, New York Community Bancorp, Inc.,[1] North Forth Bank,

Fleet Bank, MKM Acquisitions, LLC, Arrow Financial Services, LLC,

Beth Israel Hospital, the Law Firm of Mel S. Harris and

---

[1] Subsequent to the filing of this action, the plaintiffs and Defendant New York Community Bancorp entered a "Stipulation and Order Dismissing Plaintiffs' Claims Against New York Community Bancorp" dated November 30, 2004, that was so ordered by this Court on December 13, 2004 ("Stipulation"). Pursuant to the Stipulation, plaintiff agrees to "withdraw with prejudice all claims asserted against New York Community Bancorp in this case." (Stipulation at 2).

Associates, the Honorable Judith Kaye, Chief Judge of the Court
of Appeals of the State of New York, the Honorable Jonathan
Lippman, Chief Administrative Judge of the Courts of the State of
New York, and Diana L. Taylor, Superintendent of the State of New
York Banking Department, challenging the constitutionality of New
York Civil Practice Law and Rules ("NYCPLR") § 5222, the
garnishment provision for the enforcement of money judgments.
Specifically, plaintiffs claim that NYCPLR § 5222, as applied to
an attempt to collect a debt by freezing a bank account
containing only legally exempt, electronically deposited Social
Security funds, violates their due process rights under the
Fourteenth Amendment to the United States Constitution and
Article 1, § 6 of the New York State Constitution.  Plaintiffs
also claim that NYCPLR § 5222 is invalid under the Supremacy
Clause of the United States Constitution because the statute
conflicts with the exemption provision of the Social Security Act
("SSA"), 42 U.S.C. § 407 (a).

Defendants, the Honorable Judith Kaye, the Honorable
Jonathan Lippman, and Diana L. Taylor, (collectively "State
defendants") and Defendant North Fork Bank move to dismiss
plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(6) of
the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").
Defendant Fleet National Bank ("Fleet"), sued herein as Fleet
Bank, moves to dismiss plaintiffs' Second Amended Complaint

pursuant to Rule 12(b)(6), or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. Rule 56. Defendant Beth Israel Medical Center ("Beth Israel"), sued herein as Beth Israel Hospital, moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the following reasons, the defendants' motions are granted in part and denied in part.

## BACKGROUND

The following facts are drawn from the complaint and attached exhibits, as is appropriate given the nature of the motions. Except as otherwise noted, the facts are undisputed.

### New York Garnishment Statute–NYCPLR § 5222

In New York, garnishment is government by Article 52 of the NYCPLR. Pursuant to NYCPLR § 5222(a), a creditor seeking to enforce a money judgment can serve a restraining notice on a third party, such as a bank, that has control over assets belonging to the debtor. The creditor's attorney can sign the restraining notice as an "officer of the court." *See* NYCPLR 5222(a). The restraining notice can be served by certified or registered mail (*See* NYCPLR 5222(a), 5224(3)), or electronically by e-mail or magnetic tape when a bank has consented to such service. *See* NYCPLR 5222(g); 5224(a)(4). Upon receiving a restraining notice, a bank is required to "freeze" the debtor's funds in an amount up to twice the amount of the judgment until the judgment is satisfied or vacated or a sheriff seizes the

debtor's property.  The restrained property cannot be sold, transferred or assigned except on direction of a sheriff or marshal or a court.  *See* NYCPLR 5222(b).  The third party is required to comply with the provisions of the restraining notice, and disobedience is punishable by contempt of court. *See* NYCPLR § 5222(a) & (b).

Within four days of serving the third party, the creditor is required to serve the debtor with a copy of the restraining notice together with an additional "notice to the judgment debtor," as mandated by NYCPLR 5222(e).  *See* NYCPLR 5222(d)(3).  The "notice to the judgment debtor" informs the debtor that his or her money has been restrained, but advises the debtor that under federal and state law, certain property is exempt from collection efforts, such as social security and supplemental security income.  In addition, the debtor is advised that if he or she believes the restrained money is exempt, the debtor may "contact the person sending the notice," that he or she may consult an attorney, that it may be possible to get Legal Aid representation, and that the debtor should "act promptly." *See* NYCPLR 5222(e).  The notice further advises the debtor that he or she may bring a proceeding pursuant to NYCPLR §§ 5239 and 5240[2] to challenge the restraint.

_____

[2] Section 5239 provides that "any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt."  NYCPLR § 5239.

### Facts Concerning Plaintiff Denis Mayers

Plaintiff Denis Mayers receives $698 each month in Social Security Disability ("SSD") payments, which are electronically deposited into his bank account. The only other income he receives is a $4.50 per diem stipend for volunteer work and $141 per month in food stamps. In 2000, Defendant MKM Acquisitions ("MKM"), a creditor located in New York, filed suit in New York State Civil Court in Kings County seeking judgment on debt owed by Mayers. On May 24, 2001, MKM received judgment in the amount of $1594.15. At the time the judgment was entered, Mayers held an account at Chase Bank.

In 2001 or 2002, MKM, through an attorney, sought to restrain Mayers' Chase bank account, which contained only electronically deposited Social Security benefits. It is unknown whether MKM's attorney at this time was Mel S. Harris & Associates. (Second Amended Compl. ¶ 47). The restraint was lifted after Mayers' counsel, South Brooklyn Legal Services, contacted MKM's attorney and advised the attorney that Mayers' account contained only exempt funds. As a result of this restraint, four checks issued by Mayers were dishonored, and he was charged $100 in bank fees for the dishonoring of the checks or for processing the restraining notice. (Second Amended Compl.

---

Section 5340 provides that "the court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." NYCPLR § 5240.

¶ 48). Mayers subsequently closed his Chase account and opened a checking account with Roslyn Savings Bank.

On or about September 19, 2002, MKM made a second attempt to collect the judgment, and a restraint was issued by MKM's attorney on Mayers' bank account at Roslyn Savings Bank. The bank froze the account, and Mayers had to borrow money to pay his rent. On September 30, 2002, South Brooklyn Legal Services contacted MKM's attorney, an attorney belonging to a firm other than defendant Mel S. Harris & Associates, and advised them that the account contained only exempt funds. (Second Amended Compl., ¶50). Defendant MKM faxed a letter that same day to Roslyn Savings Bank releasing the restraint. On October 3, 2002, Roslyn Savings Bank lifted the restraint on Mayers' account.

On or about October 16, 2003, MKM, through its attorneys, defendant Mel S. Harris and Associates, made a third attempt to collect the judgment by serving a restraining notice on Roslyn Savings Bank. However, Mel S. Harris and Associates failed to provide Mayers with notice pursuant to NYCPLR §§ 5222(d) and (e). At the time the restraint was served, Mayers' account contained $415.30 in exempt funds. Mayers learned of the restraint when he received an October 23, 2003 letter from Roslyn Savings Bank. On November 3, 2002, South Brooklyn Legal Services contacted Mel S. Harris and Associates advising them that Mayers' account contained only exempt funds, and the next day, Mel S.

Harris and Associates faxed a letter to Roslyn Savings Bank
lifting the restraint.  Roslyn Savings Bank, however, did not
lift the restraint until November 13, 2003.  Mayers' rent check
for October 2003 bounced generating a $20 banking fee, and Roslyn
Savings Bank returned his electronically deposited Social
Security check to the Social Security Administration (SSA) on
November 3, 2003.  After making several calls to both the SSA and
Roslyn Savings Bank, Mayers received his Social Security payment
on November 20, 2003.  On October 31, 2003 Roslyn Savings Bank
merged with Defendant New York Community Bank.  The New York
Community Bank has a written policy not to restrain accounts
containing only electronically deposited Social Security payments
in accordance with 42 U.S.C. § 407(a).[3]  Plaintiff Mayers
continues to receive his SSD checks by electronic deposit at New
York Community Bank.

### Facts Concerning Plaintiff Nancy Ciccone

Plaintiff Nancy Ciccone is a 70 year old widow who
lives with her mentally disabled son.  She receives $954 per

---

[3] New York Community Bancorp's written policy states that:
Certain funds are exempt from attachment in accordance with
C.P.L.R. 5227, for example, Social Security, SSI Disability
Benefits, etc.  Therefore if an account received direct deposit
and it can be clearly determined that the funds in the account
represent ONLY exempt funds, and the proceeds of the direct
deposit are used almost in their entirety by the customer between
deposit periods, then an exception may be made and no hold will be
placed on the account.
*See* Affirmation of John Fennell, Vice President of New York Community Bancorp
dated October 15, 2004 ("Fennell Aff").

month from Social Security and $715 per month in SSD payments as representative payee on behalf of her son.  Both payments are electronically deposited in her North Fork Bank account, and she and her son have no other source of income.  In 1999, Defendant Arrow Financial, a creditor located in Illinois, acquired debt owed by Ciccone and filed suit in the District Court for Suffolk County, seeking judgment on the debt.  On January 19, 2000, a $2,006.63 judgment was entered in favor of Arrow Financial.  In July 2002 and again in April 2003, Arrow Financial, through an attorney other than defendant Mel S. Harris and Associates, restrained Ciccone's bank account at North Fork Bank, which contained only exempt funds.  (Second Amended Compl. ¶ 76).  On both occasions, Ciccone contacted Arrow Financial's attorney and had the restraint lifted.  As a result of the restraints, she bounced a number of checks and incurred bank and late payment fees.

On May 28, 2004, Arrow Financial, through its attorneys, defendant Mel S. Harris and Associates, restrained Ciccone's account for a third time.  Mel S. Harris and Associates failed to provide Ciccone with notice pursuant to NYCPLR §§ 5222 (d) and (e).  Ciccone learned of the restraint on May 28, 2003, when she called North Fork Bank.  On June 1, 2004, Ciccone obtained the help of South Brooklyn Legal Services, who contacted Mel S. Harris and Associates and advised them that Ciccone's

account contained only exempt funds.  North Fork Bank lifted the restraint on June 8, 2004.

As a result of this restraint, Ciccone bounced several checks and was late in paying three credit card bills, which generated banking fees and late fees, including a $100 fee charged by North Fork Bank as a fee for restraining her account. Ciccone continues to receive her Social Security payments electronically at North Fork Bank.  Although she claims not to like this arrangement, she alleges that the other options, such as writing money orders or cashing paper checks, are more expensive.

### Facts Concerning Plaintiff Elba Quinones

Plaintiff Elba Quinones is 58 years old and disabled. She receives $241 per month in SSD payments and $430 per month in SSI payments.  On two separate occasions in May 1995, she was treated at Beth Israel Hospital and billed $1,445.  In 1997, Beth Israel obtained a judgment for $1797.10 against Quinones in New York City Civil Court.  Sometime thereafter, Beth Israel Hospital restrained her bank account at Norwest Bank.  At the time of the restraint, her account contained only exempt funds.  This restraint was lifted after she went to the billing department at Beth Israel and informed them that her account contained only exempt funds.  Plaintiff Quinones' account was restrained for approximately 5 days.

In 2002, Beth Israel restrained her account a second time. By that time, defendant Fleet Bank had acquired Norwest Bank. The account contained only exempt funds, and was restrained for 5 days. The restraint on the account was lifted after Quinones informed the billing department at Beth Israel that her account contained only exempt funds. On February 26, 2004, Beth Israel Hospital, through defendant Mel S. Harris and Associates, restrained Quinones' account a third time, and again, the attorneys failed to provide her with notice pursuant to NYCPLR §§ 5222 (d) and (e). Quinones learned of the restraint on March 1, 2004 when she went to Fleet Bank and attempted to withdraw funds. Later that day, she received a letter from Fleet Bank regarding the restraint, and the letter included a copy of the restraining notice. Quinones, upon realizing that her next social security check was scheduled to be deposited on March 3, 2004, called SSA and requested they mail a paper check. SSA informed Plaintiff Quinones that it could not stop electronic payment for March, but subsequent payments would be by paper check. (Second Amended Compl. ¶ 114).

Quinones alleges that she called defendant Mel S. Harris and Associates nine times in an attempt to lift the restraint, but no one returned her calls. On March 3, 2004, she contacted South Brooklyn Legal Services, which in turn contacted defendant Mel S. Harris and Associates the next day to inform

them that Quinones' account contained only exempt funds. The restraint was lifted on March 8, 2004. As a result of the restraint, Quinones alleges she was unable to withdraw her March SSI and SSD payments for nine days, during which time she had trouble purchasing food and incurred penalty fees for late payment of credit card bills. After the restraint in February 2004, Quinones stopped using electronic deposit and began cashing checks at a cash checking store, even though it is more expensive.[4]

### Relief Requested

Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedures. Specifically, plaintiffs seek a declaration that defendants violated plaintiffs' rights under 42 U.S.C. § 407(a), the Due Process Clause of the Fourteenth Amendment, and the Due Process Clause of Article 1, § 6 of the New York State Constitution, and a declaration that "NYCPLR § 5222 is unconstitutional under the Due Process Clause of the Fourteenth Amendment, the Supremacy Clause of the U.S. Constitution, and the

---

[4] Following the commencement of this court action, Beth Israel has stated that its judgment is satisfied and collection efforts will no be longer pursued against Quinones. (See Loughlin Aff. at ¶¶ 2-5 and Beth Israel's Memo of Law at 3). Beth Israel has offered to stipulate to abandon its rights to enforce the judgment. (Loughlin Aff at ¶ 3). If Quinones declines to enter into the agreement, Beth Israel states that it will "unilaterally serve and file with the Clerk of the New York State Civil Court a Satisfaction of Judgment." (Id. at ¶ 4). Neither plaintiff Quinones nor defendant Beth Israel have identified any other pending transaction that would lead Beth Israel to obtain a future judgment.

Due Process Clause of Article 1 § 6 of the New York State Constitution [in] so far as it requires the restraint of bank accounts that contain only electronically deposited Social Security Funds that are exempt from attachment." (Second Amended Complaint at 27).

Plaintiffs also seek injunctive relief pursuant to 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedures. Specifically, plaintiffs seek "to enjoin defendants to develop procedures to ensure that accounts that contain only electronically deposited exempt funds will not be frozen in the future in response to requests from debt collectors." *Id.* Finally, plaintiffs seek costs and reasonable attorneys' fees expended by the New York Legal Assistance Group under 42 U.S.C. § 1988. *Id.*

## DISCUSSION

### Jurisdiction

This Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1331, which creates jurisdiction over civil actions arising under federal law, 28 U.S.C. § 1343, which creates jurisdiction over actions arising under 43 U.S.C. § 1983, and 28 U.S.C. § 1367, which creates supplemental jurisdiction over claims arising under state law.

### State Defendants as Proper Parties

As a preliminary matter, State defendants contend that

they are not proper parties to the action because they do not have a special duty to enforce § 5222 nor are they explicitly referred to in the statute, unlike the "Clerk of Court" and the "sheriff," who are explicitly mentioned. (State Defs. Memo. at 12; State Defs. Reply Memo. at 3).

In *Ex Parte Young,* the Supreme Court held that a state official may be joined as a defendant to a suit to restrain the enforcement of an allegedly unconstitutional statute if that official "by virtue of his office has some connection with the enforcement of the act." *Ex Parte Young*, 209 U.S. 123, 157 (1908); *see also Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976). "So long as such a connection exist[s]...the suit to restrain enforcement c[an] be characterized as a suit against the official personally...and the bar of the eleventh amendment [i]s thereby avoided." *Finberg v. Sullivan,* 634 F.2d 50, 54 (3d Cir.1980). Moreover, it is the existence of "some connection" that is the "important and material fact, and whether it arises out of the general law, or is specially created by the act itself is not material so long as it exists." *Ex Parte Young*, 209 U.S. at 157.

In *Deary v. Guardian Loan Company*, 563 F.Supp. 264 (S.D.N.Y. 1983), a case in which plaintiffs challenged the constitutionality of § 5222, the district court denied a similar motion to dismiss by the then Chief Judge, Chief Administrative

Judge, and Superintendent of Banks. The *Deary* court found plaintiffs' allegations that "the court clerks, attorneys and banks who process the challenged notices do so under the supervision and regulation of the state defendants" sufficient to withstand a motion to dismiss under *Ex Parte Young.* In so ruling, the court observed that "a plaintiff challenging the constitutionality of a state statute need not name as defendants only the state officials responsible for the ministerial acts in connection with the enforcement of the statute." *Id.* at 264 (S.D.N.Y. 1983)*citing Socialist Workers Party v. Rockefeller*, 314 F.Supp. 984, 988 n.7 (S.D.N.Y.)(three-judge court), *aff'd*, 400 U.S. 806 (1970).

Here, plaintiffs allege that Judith Kaye, as Chief Judge of the State of New York, and Jonathan Lippmann, as Chief Administrative Judge of the Court of New York, oversee the administration of trial courts and "require banks, pursuant to NY CPLR § 5222 and the resulting contempt power of the courts, to restrain bank account that contain only electronically deposited" exempt funds. (Second Amended Compl. ¶¶ 16-17, 121). Plaintiffs also allege that Diana Taylor, as the New York State Superintendent of Banks, supervises and regulates banks which process restraining notices received pursuant to § 5222 and can threaten sanctions for failure to comply. (Second Amended Compl. ¶¶ 18,52,64). The State Defendants argue that these allegations

fail to establish a sufficient connection, and that the decision in *Deary* should not be followed.  (State Defs. Reply Memo. at 4).

Although there is some authority to support the State defendants' position,[5] I conclude that plaintiffs in this case have sufficiently alleged that State Defendants "by virtue of their office have some connection with the enforcement of the act." *Ex Parte Young,* 209 U.S. at 157.  At this stage in the proceedings, "it cannot be said that plaintiffs can prove no set of facts in support of [their] claim."  *Deary,* 563 F.Supp. at 266*, quoting Conley v. Gibson*, 355 U.S. 41, 45-6 (1957).

## Standard for a Rule 12(b)(1) Motion

Defendant Beth Israel moves to dismiss the claims asserted against it pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, on the grounds of mootness and lack of standing.  When a defendant challenges the legal sufficiency of the plaintiff's jurisdictional allegations, "the court must take all facts alleged in the complaint as true and draw allegations all

---

[5] State defendants cite *Warden v. Pataki,* 35 F.Supp.2d 354, 359 (S.D.N.Y. 1999), *aff'd sub nom. Chan v. Pataki,* 201 F.3d 430 (2d Cir.1999), in which the district court held that Governor Pataki was not a proper party to a suit based on his "duty under the New York Constitution to take care that the laws are faithfully executed." *Id.* at 359.  Noting that there was authority to support the contrary position, the district court in *Warden v. Pataki* found that "a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." *Id.* However, here, plaintiffs argue that they bring claims not based on State defendants' "general duty" to enforce laws, but because they are the heads of state agencies with "particular responsibility over the challenged statute." (Plaintiffs' Memo. at 24).

reasonable inferences in favor of the plaintiff." *Robinson v. Government of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001). "But where evidence relevant to the jurisdictional question is before the court, the district court may refer to that evidence." *Id; see also U.S. v. Vasquez,* 145 F.3d 74, 80 (2d Cir. 1998)(On a 12(b)(1) motion, courts "may consider evidence outside the pleading, such as affidavits").

*Mootness*

Defendant Beth Israel argues that Plaintiff Quinones' claims against it are moot because the restraint on her account has been lifted and Beth Israel's judgment against her has been deemed satisfied. "In general, a case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt,* 455 U.S. 478, 481 (1982), quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969); *see also Video Tutorial Services, Inc. v. MCI Telecommunications Corp.,* 79 F.3d 3, 5 (2d Cir.1996). There is, however, an exception to this general rule when a case is "capable of repetition, yet evading review." *Murphy,* 455 U.S. at 481. In the absence of a class action, the 'capable of repetition evading review' doctrine is limited to a situation where: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation [or demonstrated

probability] that the same complaining party would be subjected to the same action again." *Video Tutorial,* 79 F.3d at 6, quoting *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975)(per curiam). However, the "mere theoretical possibility that this scenario will arise again is not sufficient for the capable of repetition exception to apply." *Haley v. Pataki,* 60 F.3d 137, 141 (2d Cir.1995). Moreover, the Second Circuit has identified a "*third* requirement, which is really just a gloss on the second: [plaintiff] must show that these *same parties* are reasonably likely to find themselves in dispute of the issues raised" in this action. *Video Tutorial,* 79 F.3d at 6 (emphasis in original).

In this case, it is undisputed that Plaintiff Quinones' account is no longer restrained, and that Beth Israel's judgment has been deemed satisfied. (Loughlin Aff. at ¶¶ 2-5). Moreover, Defendant Beth Israel affirms that it is unaware of any other "pending transaction ...with Quinones (or any other plaintiff in this case)" that would lead to a future judgment or restraint, (Beth Israel Reply Memo at 5; Loughlin Aff. at ¶¶ 2-5), and Plaintiff Quinones has not alleged otherwise.[6]  Plaintiff

---

[6]  Defendant Fleet argues that because Plainitff Quinones is the only plaintiff to allege a claim against it, and because Fleet was the garnishee bank with respect to the restraining notices served by BMIC, BMIC's mootness arguments "apply with equal force" to Quinones' claims against Fleet. (Fleet Reply Memo at 2-3). Fleet did not raise this jurisdictional argument in its original motion to dismiss, and takes up the issue for the first time in its reply papers on the grounds that "subsequent to the service of Fleet's motion to dismiss, Fleet learned that plaintiff Quinones and Beth Israel Hospital

Quinones argues that her claims nonetheless fall within the
"capable of repetition" exception because she "remains a person
of modest income who is likely to incur another money judgment
and suffer and attempted garnishment to execute it." (Plaintiffs'
Memo at 39); *see also Finberg v. Sullivan,* 634 F.2d 50, 56 (3d
Cir. 1980).[7]  I find that Plaintiff Quinones has not satisfied
the burden of showing beyond mere "theoretical possibility" that
"these *same parties*"--Quinones and Beth Israel–"are reasonably
likely to find themselves in dispute of the issues raised."
*Video Tutorial,* 79 F.3d at 6 (emphasis in original).
Accordingly, Plaintiff Quinones' claims against Defendant Beth
Israel are dismissed as moot.  Having granted dismissal on
mootness grounds, I need not address Beth Israel's arguments
regarding standing.

## Standard for 12(b)(6) Motion to Dismiss

stipulated to satisfy the judgment." (*Id.* at 2).  Thus, plaintiffs have not
had an opportunity to respond to the mootness arguments raised by Fleet Bank.
In any case, the satisfaction of judgment between Quinones and Fleet does not
necessarily render her claims against Fleet moot, because she continues to
have an account containing exempt funds at Fleet and she "remains a person of
modest income who is likely to incur another money judgment and suffer an
attempted garnishment to execute it." *Finberg v. Sullivan,* 634 F.2d 50, 56 (3d
Cir.1980).

[7]  Although Plaintiff cites *Finberg* to support the argument that her
claims are not moot, *Finberg* is distinguishable in that the plaintiff
"remain[ed] a judgment debtor" even after recovering the exempt funds that had
been attached and "Sterling [the creditor] might repeat its attempt to garnish
the accounts."  *Id.* at 55.  Moreover, the defendant in *Dionne v. Bouley,* 757
F.2d 1344, (1st Cir.1985), another case cited by the plaintiffs, was the Chief
Clerk, who was responsible for issuing writs of attachment under Rhode
Island's garnishment statute.  In that case, it could be said that given the
plaintiff's modest income, there was a reasonable probability that the same
parties would be reasonably likely to find themselves in a similar disute.

Defendants seek dismissal of plaintiffs' Second Amended Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6). In considering a motion pursuant to Rule 12(b)(6), a court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002)(citing *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001)), although "mere conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Helt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. V. Town of Darien*, 56 F.3d 375,378 (2d Cir.1995). A Court is also permitted to take into account the contents of documents attached to or incorporated in the complaint. *Colmas v. Harsett*, 886 F.2d 8,13 (2d Cir.1989). Dismissal is appropriate only when it "appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80,83 (2d Cir.2000).

## Summary Judgment Standard

In addition to its Rule 12(b)(6) motion to dismiss, defendant Fleet Bank moves, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. Rule 56. Rule 56 provides

for summary judgment "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987).

<u>42 U.S.C. § 1983</u>

Plaintiffs' complaint does not specifically reference 42 U.S.C. § 1983; however, it adequately sets forth facts, circumstances and allegations of constitutional violation from which a claim for relief under § 1983 can be inferred.[8] Plaintiffs allege that defendants' application of restraint procedures to accounts containing "only exempt, electronically deposited" Social Security funds violate plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment. (Second

---

[8] The failure to specifically mention § 1983 in the complaint was likely an oversight as the plaintiffs refer to it throughout their supporting memorandum of law.

Amended Complaint at 25).

Section 1983 of 42 U.S.C. provides, in pertinent part:

Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State
... subjects, or causes to be subjected, any citizen of
the United States or other person within the
jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution
and laws, shall be liable to the party injured in an
action at law, suit in equity, or other proper
proceeding for redress.

42 U.S.C. § 1983.  In order to allege a Section 1983 claim, a

plaintiff must (1) "allege the violation of a right secured by

the Constitution and laws of the United States" and (2) "show

that the alleged deprivation was committed by a person acting

under the color of state law."  *West v. Atkins*, 478 U.S. 42, 48

(1988).

## State Action

Defendants Fleet and North Fork (the "Bank Defendants")

argue that the they are private parties whose conduct does not

amount to "state action," as required for a § 1983 claim. (*See*

North Fork Memo at 7; Fleet Memo at 11).  The "under color of

state law" requirement for a § 1983 claim is legally

indistinguishable from the "state action" requirement under the

Constitution.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S.

40, 49-50, n. 8 (1999); *Rendell-Baker v. Kohn,* 457 U.S. 830, 838

(1982); *Tancredi v. Metropolitan Life Ins. Co.,* 316 F.3d 308, 312

(2d Cir. 2003).  In order to satisfy the state action requirement

where the defendant is a private entity, the allegedly
unconstitutional conduct must be "fairly attributable" to the
state. *Tancredi,* 316 F.3d at 312 (quoting *American Mfrs. Mut.
Ins. Co.*, 526 U.S. at 51).

The Supreme Court has held that private activity can be
viewed as state action when it results from the State's exercise
of "coercive power," or when the State provides "significant
encouragement, either overt or covert," or when a private actor
operates as a "willful participant in joint activity with the
State or its agents," or when the private entity has been
delegated a public function by the State. *Brentwood Academy v.
Tennessee Secondary School Athletic Association,* 531 U.S. 288,
295 (2001) (citations omitted); *Tancredi*, 316 F.3d at 313. These
tests are commonly referred to as the "state compulsion" test,
the "close nexus/joint action" test, and the "public function"
test. *Tewksbury v. Dowling*, 169 F. Supp.2d 103, 108 (E.D.N.Y.
2001) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 939
(1982)). Although they are often described as "separate" tests,
the Supreme Court has queried "[w]hether these different tests
are actually different in operation or simply different ways of
categorizing the necessarily fact-bound inquiry that confronts
the Court in such a situation..." *Lugar,* 457 U.S. at 939.
Applying the generous standard of review required on a motion to
dismiss, I find that plaintiffs have alleged facts sufficient to

permit the inference that the bank defendants were acting under color of state law.

*State Compulsion*

In order to satisfy the "state compulsion" test, a plaintiff must show that the state "has exercised coercive power or provided such significant encouragement, overt or covert, that the choice in law must be deemed to be that of the State." *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982); *see also Okunieff v. Rosenberg,* 996 F.Supp. 343, 348-49 (S.D.N.Y. 1998), *aff'd* 166 F.3d 507 (2d Cir. 1999). In this case, plaintiffs allege that under NYCPRL § 5222, bank defendants were compelled to freeze accounts, irrespective of their contents, when served with restraint notices or risk being found in "contempt of court." (Second Amended Compl. ¶ 7; N.Y.CPLR § 5222(a)). Because the state statute does not leave the decision of whether or not to freeze an account to the bank's discretion, but instead compels certain action by threatening contempt, the choice "must be deemed that of the state." *Blum,* 457 U.S. at 1004; *compare Okunieff,* 996 F.Supp. at 349 (finding no state compulsion where the statute's terms were permissive rather than mandatory and left much discretion to the private actor).

The bank defendants, citing the Ninth Circuit's holding in *Sutton v. Providence St. Joseph Medical Center,* 192 F.3d 826 (9th Cir. 1999), argue that government compulsion, in the form of

a generally applicable statutory requirement without "something more," such as willful participation, is insufficient to hold a private entity responsible as a state actor. In *Sutton,* a private employer refused to hire Sutton after he failed to provide a social security number as required by federal law. Sutton, alleging that his religion prevented him from providing such a number, brought suit against the private employer for religious discrimination under the Religious Freedom Restoration Act ("RFRA"). In determining whether the defendant was acting under RFRA's "color of law" standard ("analyzed under the same standard as § 1983"), the *Sutton* court concluded that in the case of a generally applicable law, "the plaintiff must establish some other nexus sufficient to make it fair to attribute liability to the private entity as a governmental action...[such as] willful participation in joint activity by the private entity and the government." *Id.* at 843. The *Sutton* court was careful to note, however, that other circuits have suggested that state compulsion in the form of a statutory requirement "without more" *is* sufficient to hold a private employer responsible as a state actor under § 1983. *Id.* at 838 (citing *NBC v. Communications Workers of Am.,* 860 F.2d 1022, 1025 (11th Cir. 1988); *Frazier v. Board of Trustees of N.W. Miss. Reg'l Med. Ctr.,* 765 F.2d 1278, 1284-85 (5th Cir.1985); *Carter v. Norfolk Community Hosp. Ass'n,* 761 F.2d 970, 972 (4th Cir.1985); *Starnes v. Capital Cities*

*Media,* 39 F.3d 1394, 1396 (7th Cir. 1994)).

While the Second Circuit has not explicitly addressed the issue, the holding in *Albert v. Carovano,* 824 F.2d 1333 (2d Cir. 1987) suggests a preference for the latter approach. In *Albert,* students at a private college brought a § 1983 due process claim against the president of the college, the dean of students, and the college itself, for suspending them for on-campus protest activities without a hearing. The students argued that defendants were acting under the color of state law because they were compelled by New York Education Law § 6450, which required college officials to proscribe specific activities as violations of public order and to provide for "appropriate disciplinary action" including "suspension [or] expulsion." *Id.* at 1339-40. Noting the statute's "severe intrusion on the autonomy" of the college and the widespread belief among college administrators that § 6450 required them to "adopt a particular stance toward campus demonstrators," the Second Circuit determined that the students had raised sufficient factual issues under the "state compulsion" theory, and that the district court had erred in dismissing their claims. Here, plaintiffs allege facts similar to those alleged in *Albert*, namely, that defendant banks believed N.Y.CPLR § 5222(a) required them to restrain accounts, irrespective of their contents, when served with restraining notices. Accordingly, I find that the facts alleged

by the plaintiffs satisfy Section 1983's "color of state law"
requirement.

Due Process

Plaintiffs claim that New York's restraint procedures,
when applied to accounts that contain only electronically
deposited exempt funds, deprive plaintiffs of property without
due process in violation of the Fourteenth Amendment.  "The
Fourteenth Amendment prohibits any State from depriving a person
of life, liberty, or property without due process of law."
*Meachum v. Fano,* 427 U.S. 215, 223 (1976).  In order to maintain
a procedural due process claim, the plaintiff must "first
identify a property right, second show that the state deprived
him of that right, and third show that the deprivation was
effected without due process." *Local 342, L.I. Pub. Serv.
Employees v. Town Bd. Of Huntington*, 31 F.3d 1191, 1194 (2d Cir.
1994) (emphasis in original), *citing Mehta v. Surles,* 905 F.2d
595, 598 (2d Cir. 1990) (per curiam).  In this case, it is clear
that plaintiffs "bank account[s] w[ere] exempt from seizure,
N.Y.Soc.Serv.L. §137...and constituted a property interest of
which [they] could not be deprived, even temporarily without due
process." *McCahey v. L.P. Investors,* 774 F.2d 543 (2d Cir.
1985)(citing *Fuentes v. Shevin,* 407 U.S. 67, 84-85 (1972).  Thus,
plaintiffs have met the first two requirements for maintaining a
due process claim.  At issue then, is whether plaintiffs were

afforded sufficient process.

In *Endicott-Johnson Corp v. Encyclopedia Press, Inc.,* 266 U.S. 285 (1924), the Supreme Court held that a judgment debtor is not constitutionally entitled to notice and a hearing prior to a garnishment, because the underlying judgment served as sufficient "notice of what will follow." *Id.* at 288.  However, post-judgment remedies have been repeatedly challenged under the due process clause "largely on the grounds that *Endicott* never considered the existence of property exempt...from execution that might nevertheless be seized... [if] notice and an opportunity to be heard are not accorded the debtor." *McCahey,* 774 F.2d at 548; *see also Finberg v. Sullivan,* 634 F.2d 50 (3d Cir.1980); *Deary v. Guardian Loan Corp.,* 534 F.Supp. 1178 (S.D.N.Y. 1982).[9]

In *McCahey v. L.P. Investors,* 774 F.2d 543 (2d Cir. 1985),* a single mother who received exempt Aid to Families with Dependent Children ("AFDC") payments, brought suit challenging the constitutionality of New York's garnishment statute, including the specific provision that is at issue in this case: § 5222.  The Second Circuit applied a balancing analysis derived from *Matthews v. Eldridge,* 424 U.S. 319, 334 (1976) in assessing

---

[9]    In *Deary*, Judge Lasker declared unconstitutional the predecessor statute of the one at issue in this case, which led to amendments by the New York State Legislature. NY CPLR §§ 5222, 5232 (McKinney Supp.1983).  Judge Lasker found that New York's earlier post-judgment remedies violated due process because they did not provide notice to the debtor that: (1) property had been seized; (2) such property might be exempt from seizure; or (3) there were procedures available to contest the seizure.

whether New York's garnishment statute satisfied due process.

*McCahey,* 774 F.2d 543.  In *Matthews,* Justice Powell explained

that:

> [I]dentification of the specific dictates of due
> process generally requires consideration of three
> distinct factors: First, the private interest that will
> be affected by the official action; second, the risk of
> an erroneous deprivation of such interest through the
> procedures used, and the probable value, if any, of
> additional or substitute procedural safeguards; and
> finally, the Government's interest, including the
> function involved and the fiscal and administrative
> burdens that the additional or substitute procedural
> requirement would entail.

*Matthews,* 424 U.S at 334-35.  The Second Circuit in *McCahey*

balanced the interests of the creditor, debtor and the state.

First, the court considered the creditor's interest in a "swift,

sure and inexpensive mechanism for collecting judgment," an

interest "most directly served by allowing creditors to reach

bank accounts and other liquid assets."  *McCahey,* 774 F.2d at

549.  The court found that the "debtor's interest in preserving

non-exempt property for his or her own use is...subservient to

the creditor's judgment." *Id.*  But, "the debtor has a clearly

legitimate interest in protecting exempt property from seizure."

*Id.*  Finally, the court considered the state's interests "in

providing inexpensive and rapid methods of collecting

judgements...in the efficient use of judicial resources...[and]

in seeing that law exempting property from seizure are not

evaded."  *Id.*  Balancing these competing interests, the court

concluded that New York's statutory scheme, which provides (1) post-seizure notice to debtors, (2) notice of exemptions to which they may be entitled, and (3) a prompt opportunity to challenge the seizure and assert their exemptions, "stike[s] a fair balance between the completing interests" and thus, "meets due process standards" *Id.* at 549-550.

Defendants argue that under *McCahey,* plaintiffs' due process claims must fail as a matter of law. Plaintiffs contend, however, that the present case is distinguishable because the exempt funds at issue in *McCahey* were not electronically deposited. Plaintiffs argue that this is significant because when funds are not electronically deposited, only the debtor is in a position to determine whether his funds are exempt. Thus, any kind of pre-seizure determination of whether the funds are exempt would require pre-seizure notice to the debtor, carrying with it the "risk that the debtor [would] conceal assets." *McCahey,* 774 F.2d at 550; *see also Finberg*, 634 F.2d at 57. Plaintiffs contend that since the *McCahey* decision in 1985, changes in technology which have enabled the electronic transfer of funds allow banks "to quickly and easily determine if an account contains only exempt money prior to restraining it," without any kind of pre-seizure notice to the debtor. (Second Amended Compl. ¶¶ 38-40). Plaintiffs argue that in light of these technological changes, re-evaluation of the *Matthews v.*

*Eldridge* factors is warranted.

In *Huggins v. Pataki,* 2002 WL 1732804 (E.D.N.Y. 2002), Judge Gleeson of this court considered and rejected a virtually identical "technology" argument. In *Huggins*, the plaintiff, a disabled man who received electronically deposited Social Security Disability (SSD) payments, brought a Section 1983 action against HSBC bank, alleging that the bank's compliance with New York's garnishment statute when it should have known that the electronically deposited funds were exempt violated plaintiff's due process rights. Huggins, like the plaintiffs in this case, argued that his case was distinguishable from *McCahey* because the "funds were transferred electronically to the bank in a form that clearly identified them as social security payments...[and therefore] the burden is now more properly on the bank receiving the funds to make a determination whether the funds are exempt or not." *Id.* at 3. The district court determined that:

> Although Huggins raises valid concerns about the
> advisability of New York's current garnishment process, the
> mere fact that banks are now better able to determine that
> payments are exempt does not sufficiently distinguish
> *McCahey*. Huggins suggests that since *McCahey* employed the
> balancing test established by *Matthews v. Eldridge*...I
> should re-balance the competing interests in light of
> technological change...I disagree. *McCahey* is binding
> authority, and I am obliged to apply that authority.
> Perhaps arguments directed to the state legislature will
> produce a change in law. If Huggins chooses to appeal this
> decision to the Second Circuit, it may be inclined to
> reconsider its previous decision. But I conclude that I am
> bound to follow it.

*Id.* at *4. With all due respect, I disagree with the

determination in *Huggins,* and find that *McCahey* does not mandate
dismissal of plaintiffs' due process claim.

"Due process, unlike some legal rules, is not a
technical conception with a fixed content unrelated to time,
place and circumstances." *Connecticut v. Doehr,* 501 U.S. 1, 10
(1991)(finding that a state statute authorizing prejudgment
attachment of real estate without notice or hearing violates due
process)(citing *Matthews v. Eldridge,* 424 U.S. at 334).  It is
"flexible and calls for such procedural protections as the
particular situation demands." *Memphis Light, Gas and Water
Division v. Craft*, 436 U.S. 1, 15 n. 15 (1978).  Moreover, "a
procedural rule that may satisfy due process for attachments in
general...does not necessarily satisfy due process in every
case." *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 340
(1969)(finding state's prejudgment wage garnishment procedure to
violate due process).

In this case, plaintiffs have alleged facts that the
*McCahey* court did not consider and which, if proved, necessitate
a re-examination of the second and third prongs of the *Matthews*
test.  The second prong of *Matthews* requires a court to assess
"the risk of erroneous deprivation...and the probable value, if
any, of additional or substitute procedural safeguards."
*Matthews,* 424 U.S. at 334-35.  Plaintiffs contend that
technological changes have both increased the risk of erroneous

deprivation and increased the probable value of additional procedural safeguards. In *McCahey,* the Second Circuit determined that the additional procedural protections sought by the plaintiff were not "required by due process because their cost [was] outweighed by any benefit they might produce." *McCahey,* 774 F.2d at 550. Here, plaintiffs allege that the additional procedural protection sought--i.e. that a garnishee bank determine whether a debtor's account contains only electronically deposited exempt money prior to restraining it--would impose only a "negligible" cost in relation to the benefit it would produce, because "each electronic Social Security payment sent to a bank has the word 'SOC SEC'...imbedded in its electronic message," making it easy to identify. (Second Amended Compl. ¶38). Although the bank defendants argue that plaintiffs have misrepresented the costs of such additional protection, on a motion to dismiss, the Court must take the facts alleged in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Robinson,* 269 F.3d at 140.

Moreover, plaintiffs contend that these technological changes together with certain policy changes by the Social Security Administration have increased the risk of erroneous deprivation beyond that of a typical debtor envisioned by the *McCahey* court. Plaintiffs allege that "since 1998, the Social Security Administration has required Social Security recipients

to receive payments electronically." (Second Amended Compl. ¶
22). In order to receive paper checks by mail Social Security
recipients must "opt out of electronic payment." *Id.* (*citing* 31
C.F.R. pt.208. 63 Fed. Reg. 186). The plaintiff in *McCahey*
received paper checks, and consequently, if her account was
restrained, she could at least be assured of receiving subsequent
payments directly. Here, because plaintiffs must opt out of
electronic payment in order to receive paper checks, they face an
increased risk that subsequent exempt payments will be deposited
into a frozen account, or as was the case with Plaintiff Mayers,
returned by the bank to the SSA. (Second Amended Compl. ¶¶ 58,
114). Plaintiffs also allege that changes in technology which
enable creditors to serve restraining notices electronically on
banks, *see* N.Y. CPLR 5222(g), have also increased the risk of
erroneous deprivation by making it easier for creditors to
repeatedly restrain a debtor's exempt account.[10]

Moreover, plaintiffs contend that the facts alleged
here, which were not before the *McCahey* court, implicate the
third prong of the *Matthews* test--i.e. the "Government's
interest." In *McCahey*, the Second Circuit described the
government's interest in: (1) "providing inexpensive and rapid

---

[10] It should be noted, however, that § 5222(c) states that "leave of the
court is required to serve more than one restraining notice upon the same
person with respect to the same judgment or order." NYCPLR § 5222(c).

methods of collecting judgements...;" (2) "the efficient use of judicial resources, so they are not wasted in proceedings of little value....;" and (3) "seeing that laws exempting property from seizure are not evaded." *McCahey,* 774 F.2d at 549. Under the current statutory scheme, debtors whose accounts contain only electronically deposited exempt funds must initiate proceedings in state court in order to have restraints lifted. Accepting as true the facts alleged in the complaint, the additional procedural protections sought by plaintiffs would, at little cost, reduce the erroneous restraint of exempt accounts. This, in turn, would reduce the number of costly proceedings initiated in state court and promote a more efficient use of judicial resources.

I find that plaintiffs have alleged facts sufficient to give rise to the inference that Section 5222, as applied to accounts containing only electronically deposited exempt funds, fails to "strike a fair balance between the competing interests" and thus, does not "meet[] due process standards." *McCahey*, 774 F.2d at 549-550. At this stage in the proceedings, it cannot be said that plaintiffs can prove no set of facts which would entitle them to relief. Accordingly, defendants' motions to dismiss plaintiffs' due process claims pursuant to Rule 12(b)(6) are denied. Because "the New York State Constitution's guarantee of...due process is virtually coextensive with those of the U.S.

Constitution," *Coakley v. Jaffe,* 49 F.Supp.2d 615, 628 (S.D.N.Y.
1999), plaintiffs' claims under the due process clause of Article
1, § 6 of the New York State Constitution also withstand the
defendants' motions to dismiss under Rule 12(b)(6).

### Supremacy Clause

Plaintiffs also claim that New York's garnishment
statute, as applied to bank accounts containing only
electronically deposited social security payments, violates the
Supremacy Clause of the Constitution because it conflicts with
the Social Security Act, 42 U.S.C. § 407(a).  "The Supremacy
Clause, Const., Art VI., cl.2, invalidates state laws that
interfere with or are contrary to federal law." *Sprint Spectrum
L.P. v. Mills,* 283 F.3d 404, 414-15 (2d Cir.2002).  "Even where
Congress has not completely displaced state regulation in a
specific area, state law is nullified to the extent that is
actually conflicts with federal law." *Fidelity Federal Savings &
Loan Ass'n,* 458 U.S. 141, 152 (1982).  Such a conflict arises
"where it is impossible for a private party to comply with both
state and federal requirements, ...or where state law stands as
an obstacle to the accomplishment and execution of the full
purposes and objectives of Congress." *Sprint Spectrum,* at 415;
*see also Hines v. Davidowitz,* 312 U.S. 52, 67 (1941); *New England
Health Care, Employees Union, District 1199 v. Rowland,* 221
F.Supp.2d 297, 323 (D.Conn.2002).  Consideration under the

Supremacy Clause starts with the basic assumption that Congress
did not intend to displace state law." *Maryland v. Louisina,* 451
U.S. 721, 746 (1981).

"Although not a source of a federal right by itself...a
plaintiff may enforce a Supremacy Clause claim under Section 1983
where it is based on a statutory violation and the statute in
question creates rights, privileges or immunities in the
plaintiff." *New England Health Care,* 221 F.Supp. at 323, citing
*Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103,
107-108 (1989).  The Social Security Act creates the rights at
issue in this case.  The Social Security Act provides, in
relevant part as follows:

> (A) The right of any person to any future payment under
> this subchapter [of the Social Security Act] shall not
> be transferrable to, assignable, at law or in equity,
> and none of the moneys paid or payable or rights
> existing under this subchapter shall be subject to
> execution, levy, attachment, garnishment, or other
> legal process, or to the operation of bankruptcy or
> insolvency law.

42 U.S.C. § 407(a);[11] *see also Finberg,* 634 at 63.  Section
407(a) "imposes a broad bar against the use of any legal process
to reach all social security benefits." *Philpott v. Essex County
Welfare Board,* 409 U.S. 413, 417 (1973); *see also Lopez v.
Washington Mutual Bank, F.A.,* 302 F.3d 900, 903 (9th Cir.
2002)(noting that the phrase "other legal process" within Section

---

[11] 42 U.S.C. § 1383(d)(1) extends these provisions to SSI benefits as
well.

407(a) is "broadly construed").  The purpose of § 407 is to protect beneficiaries against the "hardships of existence" through "uninterrupted use of benefits." *Deary v. Guardian Loan Company,* 534 F.Supp. 1178, 1189 (1982); *Finberg,* 634 F.2d at 63; "By insulating social security benefits from assignment or seizure, § 407 attempts to insure that recipients have the resources necessary to meet their most basic needs." *Frazier v. Marine Midland Bank, N.A.,* 702 F.Supp. 1000, 1003 (W.D.N.Y. 1988); *see also United States v. Devall,* 704 F.2d 1513, 1516 (11th Cir. 1983).

In *Finberg,* the Third Circuit examined the effect of the state's post-judgment garnishment procedures on the purposes of § 407, and found that the "immediate effect...is to provide a judgment creditor with a means of violating the exemption...[by] mak[ing] available a process for attaching and freezing bank accounts without regard to whether they contain social security funds."[12]  *Id.*  However, the *Finberg* court noted that "even though the procedures have this effect, they might still avoid interference with congressional purposes if they operate in a manner that avoids any significant interruption of access to benefits."  *Id.*  The *Finberg* court ultimately determined that Pennsylvania's garnishment statute violated the Supremacy Clause

---

[12] Because *McCahey* involved an alleged violation of New York's social security statute, N.Y. Soc. Ser. L. § 137, rather than the federal Social Security Act, the Second Circuit did not address the Supremacy Clause issue.

because it failed to provide adequate post-seizure notice or a prompt hearing on claims of exemption, and thus, did "not operate to avoid such consequences." *Id.*

The district court in *Huggins* also addressed NYCPLR § 5222's alleged violation of the Supremacy Clause. Citing *Finberg*'s "significant interruption" language, the court determined that "while a state statute that seeks to permanently attach social security moneys would be unconstitutional," NYCPLR § 5222 does not violate the Supremacy Clause because the "deprivation involved is only temporary." *Huggins,* 2002 WL at *4. Noting that the Supremacy Clause test in this context was "essentially the same as the inquiry into the due process violation," Judge Gleeson found no constitutional violation and granted defendants' motion to dismiss. *Huggins,* 2002 WL at *4. Defendants in this case, citing *Huggins,* argue that plaintiffs' Supremacy Clause claim fails as a matter of law because § 5222 provides for prompt post-seizure notice and hearing, making the deprivation of access to benefits only "temporary."

Although due process and Supremacy Clause claims are subject to distinct legal analyses (i.e. the *Matthews v. Eldridge* balancing analysis vs. the "stands as an obstacle" analysis), in the context of garnishment procedures, the "significant interruption" inquiry has often led courts to a similar result. Generally, a court's determination of whether an interruption of

access to benefits is "significant" has been informed by whether

the statute's procedural protections comport with the dictates of

due process. *See e.g. Huggins,* 2002 WL at *4; *Zeppieri v. New*

*Haven Provision Co.,* 163 F.Supp.2d 126, 136 (D.Conn.2001)

(finding that Connecticut's garnishment statute did not violate

due process or the Supremacy Clause);[13] *Finberg,* 634 F.2d at 63

(finding that Pennsylvania's garnishment statute violated both

due process and the Supremacy Clause due to the "significant

interruption of access to benefits" caused by lack of adequate

notice and an opportunity to be heard); *Deary,* 534 F.Supp. at

1188-1189 (finding that garnishment statute violated due process

and the Supremacy Clause due to "lack of provision for notice"

and "prompt hearing," suggesting significant interruption in

benefits).  Thus, just as due process is not a "technical

conception with a fixed content unrelated to time, place and

circumstances," *Doehr,* 501 U.S. at 10 (1991), neither is the

concept of a "significant interruption," one as unyielding or as

simplistic a determination as whether the deprivation is merely

---

[13] In *Zeppieri,* plaintiffs claimed that the Connecticut garnishment statute conflicted with § 407 "in certain factual circumstances by requiring social security recipients to claim affirmatively exemptions of their social security funds from bank executions...even where the account at issue only contains exempt funds." *Id.* The court found that Connecticut's garnishment statute "provided sufficient procedural safeguards to guarantee the uninterrupted use of social security benefits, and thus fulfills the congressional mandate of § 407." *Id.* However, Connecticut's garnishment statute offers greater procedural protections than New York's garnishment statute.  The Connecticut statute requires "banks receiving executions to send claims exemption forms promptly to all judgment debtors; and the statute includes a fifteen day stay of execution from the date on which the forms are mailed to debtors."  *Id.* at 136.

"temporary" or "permanent." In considering whether a state
statute conflicts with 407(a), courts have also looked to whether
"the debtor's ability to care for herself is[] implicated."
*Devall,* 704 F.2d at 1516 (finding that a disputed provision of
the Bankruptcy Reform Act which allowed exempt funds to be paid
to the trustee did not affect recipient's ability to secure basic
care and maintenance); *see also Frazier,* 702 F.Supp. at 1003-04.
In this case, plaintiffs allege that the interruption of access
to their electronically deposited exempt funds, even for a period
of a few days, affected their ability to pay for the basic
necessities of life, such as rent, food, and medicine. (*See*
Second Amended Compl. ¶¶ 50, 56, 89, 117).

Accordingly, I find that plaintiffs have alleged facts
sufficient to give rise to the inference that Section 5222, as
applied to accounts containing only electronically deposited
exempt funds, "stands as an obstacle" to the purpose of SSA § 407
to ensure that recipients have the resources necessary to meet
their most basic needs. At this stage in the proceedings, it
cannot be said that plaintiffs can prove no set of facts which
would entitle them to relief on this claim. Defendants' motions
to dismiss pursuant to Rule 12(b)(6) are denied.[14]

---

[14] Defendant Fleet Bank also moves, in the alternative, for summary
judgment pursuant to Rule 56. However, I find that summary judgment is not
appropriate at this time because plaintiffs have not had the opportunity to
conduct discovery. *See Trammell v. Keane,* 338 F.3d 155, 161 (2d Cir.
2003)("[O]nly in the rarest of cases may summary judgment be granted against a
plaintiff who has not been afforded the opportunity to conduct discovery.").

**CONCLUSION**

For the reasons set forth above, the motions are granted in part and denied in part. Defendant Beth Israel's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is granted. The remaining motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) are denied.

The Clerk is directed to mail a filed copy of this opinion to all parties and the magistrate judge.

SO ORDERED.

Dated : Brooklyn, New York
August 31, 2005

By: /s/ Charles P. Sifton (electronically signed)
United States District Judge

---

Although plaintiffs do not oppose Fleet Bank's summary judgment motion on the specific ground that additional discovery is required pursuant to Fed. R. Civ. P. 56(f), a district judge has the discretion to deny or postpone consideration of a motion for summary judgment when he has doubt concerning the wisdom of disposing of the case at that time. *See e.g., Veillon v. Exploration Servs., Inc.*, 876 F.2d 1197, 1200 (5th Cir. 1989); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Accordingly, defendant Fleet Bank's motion for summary judgment is denied without prejudice to its renewal after plaintiffs have had an opportunity to conduct discovery.