UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Dennis Mayers, Nancy Ciccone,
and Elba Quinones

                            Plaintiffs,    CV-03-5837 (CPS)

   - against -                             MEMORANDUM OPINION
                                           AND ORDER

New York Community Bancorp, Inc., North
Fork Bank, Fleet Bank, MKM Acquisitions,
LLC, Arrow Financial Services, LLC,
Beth Israel Hospital, the law firm of Mel
S. Harris and Associates, The Hon. Judith
S. Kaye, as Chief Judicial Officer of the
State of New York, Jonathan Lippman, as
Chief Administrative Judge of the Courts
of the State of New York, and Diana L.
Taylor, the New York State Superintendent
of Banks,

                            Defendants.

----------------------------------------X

SIFTON, Senior Judge.


     Plaintiffs Denis Mayers, Nancy Ciccone, and Elba

Quinones bring this action pursuant to 42 U.S.C. § 1983 against

Defendants New York Community Bancorp, Inc.,[1] North Forth Bank,

Fleet Bank, MKM Acquisitions, LLC, Arrow Financial Services, LLC,

Beth Israel Hospital, the Law Firm of Mel S. Harris and

Associates, the Honorable Judith Kaye, Chief Judge of the Court

of Appeals of the State of New York, the Honorable Jonathan

---
[1] Pursuant a stipulation and order dated November 30, 2004 and so
ordered by this Court on December 13, 2004, plaintiff agreed to "withdraw with
prejudice all claims asserted against New York Community Bancorp in this
case."

Lippman, Chief Administrative Judge of the Courts of the State of New York, and Diana L. Taylor, Superintendent of the State of New York Banking Department, challenging the constitutionality of New York Civil Practice Law and Rules ("NYCPLR") § 5222, the garnishment provision for the enforcement of money judgments. Specifically, plaintiffs claim that NYCPLR § 5222, as applied to an attempt to collect a debt by freezing a bank account containing only legally exempt, electronically deposited Social Security funds, violates their due process rights under the Fourteenth Amendment to the United States Constitution and Article 1, § 6 of the New York State Constitution. Plaintiffs also claim that NYCPLR § 5222 is invalid under the Supremacy Clause of the United States Constitution because the statute conflicts with the exemption provision of the Social Security Act ("SSA"), 42 U.S.C. § 407 (a).

Defendants, the Honorable Judith Kaye, the Honorable Jonathan Lippman, and Diana L. Taylor, (collectively "State defendants") and Defendant North Fork Bank filed motions to dismiss plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which I denied in a memorandum opinion and order dated August 31, 2005. Defendant Fleet National Bank ("Fleet"), sued herein as Fleet Bank, filed a motion to dismiss plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(6), or in the alternative, for

summary judgment pursuant to Rule 56. I also denied Fleet's
motion in the August 31, 2005 opinion.[2] Presently before the
Court are motions filed by Fleet, North Fork Bank, and the State
defendants to certify the August 31, 2005 order for interlocutory
appeal and for stay pending appeal. For the following reasons,
the defendants' motions are denied.

### BACKGROUND

The following facts are drawn from the parties' submissions
in connection with the original motion and the motion for
certification. Except as otherwise noted, the facts are
undisputed.

### New York Garnishment Statute–NYCPLR § 5222

In New York, garnishment is governed by Article 52 of the
NYCPLR. Pursuant to NYCPLR § 5222(a), a creditor seeking to
enforce a money judgment can serve a restraining notice on a
third party, such as a bank, that has control over assets
belonging to the debtor. The creditor's attorney can sign the
restraining notice as an "officer of the court." *See* NYCPLR
5222(a). The restraining notice can be served by certified or
registered mail (*See* NYCPLR 5222(a), 5224(3)), or electronically
by e-mail or magnetic tape when a bank has consented to such

---

[2]Defendant Beth Israel Medical Center ("Beth Israel"), sued herein as
Beth Israel Hospital, filed a motion to dismiss pursuant to Fed. R. Civ. P.
12(b)(1) and 12(b)(6). I granted Beth Israel's motion to dismiss, and that
motion is not presently at issue.

service. *See* NYCPLR 5222(g); 5224(a)(4). Upon receiving a restraining notice, a bank is required to "freeze" the debtor's funds in an amount up to twice the amount of the judgment until the judgment is satisfied or vacated or a sheriff seizes the debtor's property. The restrained property cannot be sold, transferred or assigned except at the direction of a sheriff or a marshal or a court. *See* NYCPLR 5222(b). The third party is required to comply with the provisions of the restraining notice, and disobedience is punishable as a contempt of court. *See* NYCPLR § 5222(a) & (b).

Within four days of serving the third party, the creditor is required to serve the debtor with a copy of the restraining notice together with an additional "notice to the judgment debtor," as mandated by NYCPLR 5222(e). *See* NYCPLR 5222(d)(3). The "notice to the judgment debtor" informs the debtor that his or her money has been restrained, but advises the debtor that under federal and state law, certain property is exempt from collection efforts, such as social security and supplemental security income benefits. In addition, the debtor is advised that if he or she believes the restrained property is exempt, the debtor may "contact the person sending the notice," that he or she may consult an attorney, that it may be possible to get Legal Aid representation, and that the debtor should "act promptly." *See* NYCPLR 5222(e). The notice further advises the debtor that he

or she may bring a proceeding pursuant to NYCPLR §§ 5239 and 5240[3] to challenge the restraint.

## Facts Concerning Plaintiff Denis Mayers

Plaintiff Denis Mayers receives $698 each month in Social Security Disability ("SSD") payments, which are electronically deposited into his bank account. The only other income he receives is a $4.50 per diem stipend for volunteer work and $141 a month in food stamps. In 2000, Defendant MKM Acquisitions ("MKM"), a creditor located in New York, filed suit in the New York State Civil Court in Kings County seeking judgment on debt owed by Mayers. On May 24, 2001, MKM received judgment in the amount of $1594.15. At the time the judgment was entered, Mayers held an account at Chase Bank.

In 2001 or 2002, MKM, through an attorney, sought to restrain Mayers' Chase bank account, which contained only electronically deposited Social Security benefits. It is unknown whether MKM's attorney at this time was Mel S. Harris & Associates. (Second Amended Compl. ¶ 47). The restraint was lifted after Mayers' counsel, South Brooklyn Legal Services, contacted MKM's attorney and advised the attorney that Mayers'

---

[3] Section 5239 provides that "any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt." NYCPLR § 5239. Section 5340 provides that "the court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." NYCPLR § 5240.

account contained only exempt funds. As a result of this restraint, four checks issued by Mayers were dishonored, and he was charged $100 in bank fees for the dishonoring of the checks or for processing the restraining notice. (Second Amended Compl. ¶ 48). Mayers subsequently closed his Chase account and opened a checking account with Roslyn Savings Bank.

On or about September 19, 2002, MKM made a second attempt to collect the judgment, and a restraining notice was issued by MKM's attorney with respect to Mayers' bank account at Roslyn Savings Bank. The bank froze the account, and Mayers was obliged to borrow money to pay his rent. On September 30, 2002, South Brooklyn Legal Services contacted MKM's attorney, an attorney with a firm other than defendant Mel S. Harris & Associates, and advised the attorney that the account contained only exempt funds. (Second Amended Compl., ¶50). Defendant MKM faxed a letter that same day to Roslyn Savings Bank releasing the restraint. On October 3, 2002, Roslyn Savings Bank lifted the restraint on Mayers' account.

On or about October 16, 2003, MKM, through its attorneys, defendant Mel S. Harris and Associates, made a third attempt to collect the judgment by serving a restraining notice on Roslyn Savings Bank. However, Mel S. Harris and Associates failed to provide Mayers with notice pursuant to NYCPLR §§ 5222(d) and (e). At the time the restraint was served, Mayers' account contained

$415.30 in exempt funds. Mayers learned of the restraint when he received an October 23, 2003 letter concerning the restraining notice from Roslyn Savings Bank. On November 3, 2002, South Brooklyn Legal Services contacted Mel S. Harris and Associates advising them that Mayers' account contained only exempt funds, and the next day, Mel S. Harris and Associates faxed a letter to Roslyn Savings Bank requesting that the restraint be lifted. Roslyn Savings Bank, however, did not lift the restraint until November 13, 2003. Mayers' rent check for October 2003 was dishonored, generating a $20 banking fee, and Roslyn Savings Bank returned his electronically deposited Social Security check to the Social Security Administration (SSA) on November 3, 2003. After making several calls to both the SSA and Roslyn Savings Bank, Mayers received his Social Security payment on November 20, 2003. On October 31, 2003 Roslyn Savings Bank merged with Defendant New York Community Bank. New York Community Bank has a written policy not to restrain accounts containing only electronically deposited Social Security payments pursuant to 42 U.S.C. § 407(a).[4] Plaintiff Mayers continues to receive his SSD

---

[4] New York Community Bancorp's written policy states that:
> Certain funds are exempt from attachment in accordance with C.P.L.R. 5227, for example, Social Security, SSI Disability Benefits, etc. Therefore if an account received direct deposit and it can be clearly determined that the funds in the account represent ONLY exempt funds, and the proceeds of the direct deposit are used almost in their entirety by the customer between deposit periods, then an exception may be made and no hold will be placed on the account.

See Affirmation of John Fennell, Vice President of New York Community Bancorp dated October 15, 2004 ("Fennell Aff").

checks by electronic deposit at New York Community Bank.

## Facts Concerning Plaintiff Nancy Ciccone

Plaintiff Nancy Ciccone is a 70-year-old widow who lives with her mentally disabled son. She receives $954 per month from Social Security and $715 per month in SSD payments as representative payee on behalf of her son. Both payments are electronically deposited in her North Fork Bank account, and she and her son have no other source of income. In 1999, Defendant Arrow Financial, a creditor located in Illinois, acquired debt owed by Ciccone and filed suit in the District Court for Suffolk County, seeking judgment on the debt. On January 19, 2000, a $2,006.63 judgment was entered in favor of Arrow Financial. In July 2002 and again in April 2003, Arrow Financial, through an attorney other than defendant Mel S. Harris and Associates, restrained Ciccone's bank account at North Fork Bank, which contained only exempt funds. (Second Amended Compl. ¶ 76). On both occasions, Ciccone contacted Arrow Financial's attorney and had the restraint lifted. As a result of the restraints, she bounced a number of checks and incurred bank and late payment fees.

On May 28, 2004, Arrow Financial, through its attorneys, defendant Mel S. Harris and Associates, restrained Ciccone's account for a third time. Mel S. Harris and Associates failed to

provide Ciccone with notice pursuant to NYCPLR §§ 5222 (d) and
(e). Ciccone learned of the restraint on May 28, 2003, when she
called North Fork Bank. On June 1, 2004, Ciccone obtained the
help of South Brooklyn Legal Services, who contacted Mel S.
Harris and Associates and advised them that Ciccone's account
contained only exempt funds. North Fork Bank lifted the restraint
on June 8, 2004.

As a result of this restraint, Ciccone bounced several
checks and was late in paying three credit card bills, which
generated banking fees and late fees, including a $100 fee
charged by North Fork Bank as a fee for restraining her account.
Ciccone continues to receive her Social Security payments
electronically at North Fork Bank. Although she claims not to
like this arrangement, she alleges that the other options, such
as writing money orders or cashing paper checks, are more
expensive.

## Facts Concerning Plaintiff Elba Quinones

Plaintiff Elba Quinones is 58 years old and disabled. She
receives $241 per month in SSD payments and $430 per month in SSI
payments. On two separate occasions in May 1995, she was treated
at Beth Israel Hospital and billed $1,445. In 1997, Beth Israel
obtained a judgment for $1797.10 against Quinones in New York
City Civil Court. Sometime thereafter, Beth Israel Hospital
restrained her bank account at Norwest Bank. At the time of the

restraint, her account contained only exempt funds. This restraint was lifted after she went to the billing department at Beth Israel and informed them that her account contained only exempt funds. Plaintiff Quinones' account was restrained for approximately 5 days.

In 2002, Beth Israel restrained her account a second time. By that time, defendant Fleet Bank had acquired Norwest Bank. The account contained only exempt funds, and was restrained for 5 days. The restraint on the account was lifted after Quinones informed the billing department at Beth Israel that her account contained only exempt funds. On February 26, 2004, Beth Israel Hospital, through defendant Mel S. Harris and Associates, restrained Quinones' account a third time, and again, the attorneys failed to provide her with notice pursuant to NYCPLR §§ 5222 (d) and (e). Quinones learned of the restraint on March 1, 2004 when she went to Fleet Bank and attempted to withdraw funds. Later that day, she received a letter from Fleet Bank regarding the restraint, and the letter included a copy of the restraining notice. Quinones, upon realizing that her next social security check was scheduled to be deposited on March 3, 2004, called SSA and requested they mail her a paper check. SSA informed Plaintiff Quinones that it could not stop electronic payment for March, but subsequent payments would be by paper check. (Second Amended Compl. ¶ 114).

Quinones alleges that she called defendant Mel S. Harris and Associates nine times in an attempt to lift the restraint, but no one returned her calls. On March 3, 2004, she contacted South Brooklyn Legal Services, which in turn contacted defendant Mel S. Harris and Associates the next day to inform them that Quinones' account contained only exempt funds. The restraint was lifted on March 8, 2004. As a result of the restraint, Quinones alleges she was unable to withdraw her March SSI and SSD payments for nine days, during which time she had trouble purchasing food and incurred penalty fees for late payment of credit card bills. After the restraint in February 2004, Quinones stopped using electronic deposit and began cashing her benefit checks at a cash checking store, even though it is more expensive.

## Relief Requested

Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedures. Specifically, plaintiffs seek a declaration that defendants violated plaintiffs' rights under 42 U.S.C. § 407(a), the Due Process Clause of the Fourteenth Amendment, and the Due Process Clause of Article 1, § 6 of the New York State Constitution, and a declaration that "NYCPLR § 5222 is unconstitutional under the Due Process Clause of the Fourteenth Amendment, the Supremacy Clause of the U.S. Constitution, and the Due Process Clause of Article 1 § 6 of the New York State

Constitution [in] so far as it requires the restraint of bank accounts that contain only electronically deposited Social Security Funds that are exempt from attachment." (Second Amended Complaint at 27).

Plaintiffs also seek injunctive relief pursuant to 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedures. Specifically, plaintiffs seek "to enjoin defendants to develop procedures to ensure that accounts that contain only electronically deposited exempt funds will not be frozen in the future in response to requests from debt collectors." *Id.* Finally, plaintiffs seek costs and reasonable attorneys' fees expended by the New York Legal Assistance Group on plaintiffs' behalf under 42 U.S.C. § 1988. *Id.*

## DEFENDANTS' MOTIONS TO DISMISS

### State Defendants as Proper Parties

In their motion to dismiss, State defendants contended that they are not proper parties to the action because they do not have a special duty to enforce § 5222 nor are they explicitly referred to in the statute, unlike the "Clerk of Court" and the "sheriff," who are explicitly mentioned.

Although I noted that there was some authority to support the State defendants' position,[5] relying on *Ex Parte Young* and

---

[5] *See, e.g., Warden v. Pataki,* 35 F.Supp.2d 354, 359 (S.D.N.Y. 1999), *aff'd sub nom. Chan v. Pataki,* 201 F.3d 430 (2d Cir.1999), in which the district court held that Governor Pataki was not a proper party to a suit

*Deary v. Guardian Loan Company*, 563 F.Supp. 264 (S.D.N.Y. 1983),

I concluded that plaintiffs in this case had sufficiently alleged

that State Defendants "by virtue of their office have some

connection with the enforcement of the act." *Ex Parte Young,* 209

U.S. at 157. I further held that at this stage in the

proceedings, "it cannot be said that plaintiffs can prove no set

of facts in support of [their] claim." *Deary,* 563 F.Supp. at 266*,*

*quoting Conley v. Gibson*, 355 U.S. 41, 45-6 (1957).

<u>State Action</u>

Plaintiffs allege that defendants' application of restraint

procedures to accounts containing "only exempt, electronically

deposited" Social Security funds violate plaintiffs' rights under

the Due Process Clause of the Fourteenth Amendment. (Second

Amended Complaint at 25). Defendants Fleet and North Fork (the

"bank defendants") argued in their motions to dismiss that the

they are private parties whose conduct does not amount to "state

action," as required for a § 1983 claim.

Relying on the "state compulsion" test laid out by the

Supreme Court in *Brentwood Academy v. Tennessee Secondary School*

---

based on his "duty under the New York Constitution to take care that the laws
are faithfully executed." *Id.* at 359. Noting that there was authority to
support the contrary position, the district court in *Warden v. Pataki* found
that "a state official's duty to execute the laws is not enough by itself to
make that official a proper party in a suit challenging a state statute." *Id.*
However, I distinguished the present case because plaintiffs argue that they
bring claims not based on State defendants' "general duty" to enforce laws,
but because they are the heads of state agencies with "particular
responsibility over the challenged statute."

*Athletic Association,* 531 U.S. 288 (2001), and the Second Circuit Court of Appeals' holding in *Albert v. Carovano,* 824 F.2d 1333 (2d Cir.1987), and applying the generous standard of review required on a motion to dismiss, I found that plaintiffs had alleged facts sufficient to permit the inference that the bank defendants were acting under color of state law.

<u>Due Process</u>

Plaintiffs claim that New York's restraint procedures, when applied to accounts that contain only electronically deposited exempt funds, deprive plaintiffs of property without due process in violation of the Fourteenth Amendment.

In their motion to dismiss, defendants argued that under *McCahey v. L.P. Investors,* 774 F.2d 543 (2d Cir.1985)*,* plaintiffs' due process claims must fail as a matter of law. I concluded that the present case is distinguishable from *McCahey* because the exempt funds at issue in *McCahey* were not electronically deposited. Plaintiffs contended that since the *McCahey* decision in 1985, changes in technology which have enabled the electronic transfer of funds allow banks "to quickly and easily determine if an account contains only exempt money prior to restraining it," without any kind of pre-seizure notice to the debtor. (Second Amended Compl. ¶¶ 38-40). In light of these technological changes, I held that re-evaluation of the factors laid out in *Matthews v. Eldridge,* 424 U.S. 319 (1976), is

warranted.

In *Huggins v. Pataki,* 2002 WL 1732804 (E.D.N.Y.2002), Judge Gleeson of this court considered and rejected a virtually identical "technology" argument. I disagreed with the determination in *Huggins,* and found that *McCahey* did not mandate dismissal of plaintiffs' due process claim.

In so holding, I noted that in the present case, plaintiffs had alleged facts that the *McCahey* court did not consider and which, if proved, necessitate a re-examination of the second and third prongs of the *Matthews* test. The second prong of *Matthews* requires a court to assess "the risk of erroneous deprivation... and the probable value, if any, of additional or substitute procedural safeguards." *Matthews,* 424 U.S. at 334-35. Plaintiffs contend that technological changes have both increased the risk of erroneous deprivation and increased the probable value of additional procedural safeguards. In *McCahey,* the Second Circuit determined that the additional procedural protections sought by the plaintiff were not "required by due process because their cost [was] outweighed by any benefit they might produce." *McCahey,* 774 F.2d at 550. Here, plaintiffs allege that the additional procedural protection sought--i.e. that a garnishee bank determine whether a debtor's account contains only electronically deposited exempt money prior to restraining it-- would impose only a "negligible" cost in relation to the benefit

it would produce, because "each electronic Social Security payment sent to a bank has the word 'SOC SEC'...imbedded in its electronic message," making it easy to identify. (Second Amended Compl. ¶38).

Moreover, plaintiffs contend that these technological changes have increased the risk of erroneous deprivation beyond that of a typical debtor envisioned by the *McCahey* court. Plaintiffs allege that "since 1998, the Social Security Administration has required Social Security recipients to receive payments electronically." (Second Amended Compl. ¶ 22). In order to receive paper checks by mail Social Security recipients must affirmatively "opt out of electronic payment." *Id.* (*citing* 31 C.F.R. pt.208. 63 Fed. Reg. 186). The plaintiff in *McCahey* received paper checks, and consequently, if her account was restrained, she could at least be assured of receiving subsequent payments directly. Here, because plaintiffs must opt out of electronic payment in order to receive paper checks, they face an increased risk that subsequent exempt payments will be deposited into a frozen account, or as was the case with Plaintiff Mayers, returned by the bank to the SSA. (Second Amended Compl. ¶¶ 58, 114).Plaintiffs also allege that changes in technology which enable creditors to serve restraining notices electronically on banks, *see* N.Y. CPLR 5222(g), have also increased the risk of erroneous deprivation by making it easier for creditors to

repeatedly restrain a debtor's exempt account.

Moreover, plaintiffs contend that the facts alleged here, which were not before the *McCahey* court, implicate the third prong of the *Matthews* test--i.e. the "Government's interest." In *McCahey*, the Second Circuit described the government's interest in: (1) "providing inexpensive and rapid methods of collecting judgements...;" (2) "the efficient use of judicial resources, so they are not wasted in proceedings of little value....;" and (3) "seeing that laws exempting property from seizure are not evaded." *McCahey,* 774 F.2d at 549. Under the current statutory scheme, debtors whose accounts contain only electronically deposited exempt funds must initiate proceedings in state court in order to have restraints lifted. Accepting as true the facts alleged in the complaint, the additional procedural protections sought by plaintiffs would, at little cost, reduce the erroneous restraint of exempt accounts. This, in turn, would reduce the number of proceedings initiated in state court with their attendant costs and promote a more efficient use of judicial resources.

Considering the above, I found that plaintiffs had alleged facts sufficient to give rise to the inference that Section 5222, as applied to accounts containing only electronically deposited exempt funds, fails to "strike a fair balance between the competing interests" and thus, does not "meet[] due process

standards." *McCahey*, 774 F.2d at 549-550. I stated, "[a]t this stage in the proceedings, it cannot be said that plaintiffs can prove no set of facts which would entitle them to relief." Accordingly, I denied defendants' motions to dismiss plaintiffs' due process claims pursuant to Rule 12(b)(6).[6]

Supremacy Clause

Plaintiffs also claim that New York's garnishment statute, as applied to bank accounts containing only electronically deposited social security payments, violates the Supremacy Clause of the Constitution because it conflicts with the Social Security Act, 42 U.S.C. § 407(a).

In *Finberg v. Sullivan,* 634 F.2d 50, (3d Cir.1980)*,* the Third Circuit Court of Appeals examined the effect of the state's post-judgment garnishment procedures on the purposes of § 407, and found that the "immediate effect...is to provide a judgment creditor with a means of violating the exemption...[by] mak[ing] available a process for attaching and freezing bank accounts without regard to whether they contain social security funds." *Id*. However, the *Finberg* court noted that "even though the procedures have this effect, they might still avoid interference with congressional purposes if they operate in a manner that

---

[6]Because "the New York State Constitution's guarantee of...due process is virtually coextensive with those of the U.S. Constitution," *Coakley v. Jaffe,* 49 F.Supp.2d 615, 628 (S.D.N.Y. 1999), I held that plaintiffs' claims under the due process clause of Article 1, § 6 of the New York State Constitution also withstood the defendants' motions to dismiss under Rule 12(b)(6).

avoids any significant interruption of access to benefits." *Id.*
The *Finberg* court ultimately determined that Pennsylvania's
garnishment statute violated the Supremacy Clause because it
failed to provide adequate post-seizure notice or a prompt
hearing on claims of exemption, and thus, did "not operate to
avoid such consequences." *Id.*

Although due process and Supremacy Clause claims are subject
to distinct legal analyses (i.e. the *Matthews v. Eldridge*
balancing analysis vs. the "stands as an obstacle" analysis), in
the context of garnishment procedures, the "significant
interruption" inquiry has often led courts to a similar result.
In this case, plaintiffs allege that the interruption of access
to their electronically deposited exempt funds, even for a period
of a few days, affected their ability to pay for the basic
necessities of life, such as rent, food, and medicine. (*See*
Second Amended Compl. ¶¶ 50, 56, 89, 117).

Accordingly, I found that plaintiffs had alleged facts
sufficient to give rise to the inference that Section 5222, as
applied to accounts containing only electronically deposited
exempt funds, "stands as an obstacle" to the purpose of SSA § 407
to ensure that recipients have the resources necessary to meet
their most basic needs. I stated, "[a]t this stage in the
proceedings, it cannot be said that plaintiffs can prove no set
of facts which would entitle them to relief on this claim."

Accordingly, I denied defendants' motions to dismiss pursuant to Rule 12(b)(6).[7]

## DISCUSSION

### Jurisdiction

This Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1331, which creates jurisdiction over civil actions arising under federal law, 28 U.S.C. § 1343, which creates jurisdiction over actions arising under 43 U.S.C. § 1983, and 28 U.S.C. § 1367, which creates supplemental jurisdiction over claims arising under state law.

### Motions to Certify Interlocutory Appeal

Defendants Fleet and North Fork Bank and the State defendants seek to appeal the above-mentioned decisions to the Court of Appeals. They move for certification of the interlocutory appeals pursuant to 28 U.S.C. 1292(b) and for stay pending appeal.

Although the general rule in federal courts is that appeals to the circuit level lie only from final decisions of district courts, *see* 28 U.S.C. § 1291, section 1292(b) grants district courts authority to certify certain issues for interlocutory appeal. 28 U.S.C. § 1292(b). For an issue to be certified for

---

[7]Defendant Fleet Bank also moved, in the alternative, for summary judgment pursuant to Rule 56. However, I found that summary judgment was not appropriate because plaintiffs had not had the opportunity to conduct discovery. Accordingly, I denied defendant Fleet Bank's motion for summary judgment. This decision is not at issue in the present motions.

interlocutory appeal, the following criteria must be met: (1) the issue must involve a controlling question of law; (2) a substantial ground for difference of opinion must exist as to that question; and (3) an immediate appeal from the order must materially advance the ultimate termination of the litigation. *Id.* Although the defendants seek leave to appeal separate decisions within my August 31, 2005 opinion, should I grant leave to appeal *any* of those decisions, the Court of Appeals "may address any issue fairly included within the certified order because 'it is the *order* that is appealable, and not the controlling question identified by the district court.'" *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996) (emphasis in original) (quoting 9 J. Moore & B. Ward, Moore's Federal Practice ¶ 110.25[1], at 300 (2d ed. 1995)).

Even if a district court certifies an order for interlocutory appeal, the Court of Appeals may decline to hear the appeal. *See* 28 U.S.C. § 1292(b); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 81 (2d Cir.2002) ("Upon entry of...an order [certifying interlocutory appeal], the court of appeals has the discretion to accept or decline jurisdiction."); *Coopers*, 437 U.S. at 475 ("The appellate court may deny the [interlocutory] appeal for any reason, including docket congestion") (footnote omitted).

The Court of Appeals has repeatedly emphasized that a

district court is to "exercise great care in making a § 1292(b) certification." *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir.1992); *see also Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir.1990) (noting that "the power [to grant an interlocutory appeal] must be strictly limited to the precise conditions stated in the law." (*quoting Gottesman v. Gen. Motors Corp.*, 268 F.2d 194, 196 (2d Cir.1959)). "The statute must be strictly construed and 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Colon v. BIC USA, Inc.*, 2001 WL 88230 at *2 (S.D.N.Y.2001) (*quoting Klinghoffer*, 921 F.2d at 25; *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978); *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir.1996) (stating that "[i]t is a basic tenet of federal law to delay appellate review until a final judgment has been entered," and section 1292(b) constitutes "a rare exception to the final judgment rule"). Section 1292(b) was not intended "to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation," *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F.Supp. 170, 172 (S.D.N.Y.1987) (internal quotation marks omitted), or to be a "vehicle to provide early review of difficult rulings in hard cases." *German v. Fed. Home Loan Mortgage Corp.*, 896 F.Supp. 1385, 1398 (S.D.N.Y.1995). Thus,

"district court judges have broad discretion to deny
certification even where the statutory criteria are met." *Nat's
Asbestos Workers Medical Fund v. Philip Morris*, Inc., 71
F.Supp.2d 139, 166 (E.D.N.Y.1999)(stating that the authority to
deny certification even where the three statutory criteria are
met is "independent" and "unreviewable"); *Romea v. Heiberger &
Associates*, 988 F.Supp. 715, 717 (S.D.N.Y.), aff'd without
consideration of the point, 163 F.3d 111 (2d Cir.1998)(stating,
"interlocutory orders are not to be certified routinely, even
where the standards set forth in Section 1292(b) are met").

Other factors to consider include, *inter alia*: (1) "the
benefit of further factual development and a complete record on
appeal, particularly in rapidly developing or unsettled areas of
the law;" (2) "the time an appeal would likely take;" (3) "the
need for a stay pending appeal and the effect on the litigation,
including discovery, that would result from a stay;" and (4) "the
probability that other issues may moot the need for the
interlocutory appeal." *National Asbestos Workers Medical Fund*, 71
F.Supp.2d at 163; *In re Currency Conversion Fee Antitrust
Litigation*, 2005 WL 1871012, (S.D.N.Y.2005) (stating, "a district
court must consider the institutional efficiency of the federal
judiciary when considering an application for Section 1292(b)
certification. The efficiency of both the district court and the
appellate court should be considered. Balancing these

efficiencies, the benefit to the district court of obviating
needless trial time must outweigh the inefficiency to the Court
of Appeals in hearing multiple appeals in the same case");
*Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d
Cir.1991)(stating "it does not normally advance the interests of
sound judicial administration or efficiency to have piecemeal
appeals that require two (or more) three-judge panels to
familiarize themselves with a given case, instead of having the
trial judge, who sits alone and is intimately familiar with the
whole case, revisit a portion of the case if he or she has erred
in part and that portion is overturned following the adjudication
of the whole case"); *DeWitt v. American Stock Transfer Co.*, 440
F.Supp. 1084, 1088 (D.C.N.Y.1977) (citing 9 Moore's Federal
Practice P 110.22(2) at 261 (2d ed. 1975)("One consideration to
be weighed in deciding whether to certify a question for an
immediate appeal is whether the factual background of the case is
sufficiently settled to sharply define the legal issues
raised."); *see also Moll v. U.S. Life Title Ins. Co. of New York*,
1987 WL 10026, *2 (S.D.N.Y.1987); *Arnett v. Gerber Scientific,
Inc.,* 575 F.Supp. 770, 771 (D.C.N.Y.1983).

In the present case, defendants argue that the decisions
contained in the August 31, 2005 opinion meet the statutory
criteria for certification; therefore, this Court should certify
interlocutory appeal. However, I find that consideration of the

factors listed above weighs against certifying the appeal. *See,
e.g., National Asbestos Workers Medical Fund*, 71 F.Supp.2d at 166
("Assuming, without deciding, that section 1292(b)'s explicit
requirements are satisfied, the instant cases are, in any event,
inappropriate for interlocutory appeal...The unique factual and
legal issues raised in each of these cases counsel against
certifying them for interlocutory appeal.").

First, I find that the factual background of this case is
not "sufficiently settled" to "sharply define" the legal issues
raised in this matter. In denying defendants' motion to dismiss
plaintiffs' due process claim, I stated, "in this case,
plaintiffs have alleged facts that the *McCahey* court did not
consider and which, *if proved*, necessitate a re-examination of
the second and third prongs of the *Matthews* test" (emphasis
added). Similarly, with respect to plaintiffs' supremacy clause
claim, which, as I noted is related to the due process claim, I
stated, "it cannot be said that plaintiffs can prove no set of
facts which would entitle them to relief on this claim." I also
rejected the State defendants' argument that they were not proper
parties to the action and the Bank defendants' argument that they
were not state actors on the grounds that plaintiffs had alleged
sufficient facts in support of their claims. Because the parties
have not engaged in discovery, the Court of Appeals, in deciding
the interlocutory appeal, would have to evaluate plaintiffs'

claims without the benefit of an adequately developed factual record. Because, as I held in the August 31, 2005 opinion, the facts of this case are central to the legal issues presented, I find that certification of interlocutory appeal is not warranted at this time. *See Allied Princess Bay Co. v. Atochem N. Am., Inc.*, 1992 WL 135235, at *2 (E.D.N.Y.1992) ("[I]nterlocutory appeal is currently inappropriate because the facts of the case have not yet fully developed. Judicial economy would not be advanced by appellate review at this time."); *National Asbestos Workers Medical Fund*, 71 F.Supp.2d at 167 ("Appeal at this stage of the litigation, before full development of the facts, would significantly undermine the ability of the trial and appellate courts-both the court of appeals and the Supreme Court-to fully consider both the similarities and differences between the injuries of plaintiffs in the instant case[] and those alleged in [past] cases."); *State of California v. Harvier*, 700 F.2d 1217, 1219 (9th Cir.1983) ("[W]hen a legal question 'has serious consequences and is an issue upon which there is a diversity of opinions...[t]he developmental process before the district court would provide [the Court of Appeals] with a better foundation upon which to make [its] decision.'" (*quoting Quechan Tribe v. Rowe*, 531 F.2d 408, 412 (9th Cir.1976).

Consideration of the remaining factors also weighs in favor of denying defendants' motion. Although defendants argue that if

the Court of Appeals reversed the August 31, 2005 order, the ultimate termination of the litigation would be materially advanced, it is also possible that the Court of Appeals could affirm part or all of the order. In that case, ultimate termination of the litigation would be materially *delayed*, given the time it takes a case to make its way through appeal, and given that defendants also seek a stay pending appeal. The final judgment rule "protects the judicial process and its participants from the delay which can prove advantageous to a well-financed litigant, and fatal to the less well-endowed." *Bryant v. Sylvester*, 57 F.3d 308, 311 n. 4 (3d Cir.1995) (*quoting Lusardi v. Xerox Corp.*, 747 F.2d 174, 177 (3d Cir.1984))(internal quotation marks omitted).

Finally, it is possible that some of the questions that would be raised on interlocutory appeal will become moot on final judgment. "Either the [defendants] may win on all or part of the substantive issues, thus obviating the need for any appeal, or the [defendants] may lose on the merits but on grounds unrelated to the earlier claims of error that would have served as the basis for an interlocutory appeal." *National Asbestos Workers Medical Fund*, 71 F.Supp.2d at 148. Moreover, this Court "should take into account that most civil cases settle and that, in consequence, there is a substantial probability that [the Court of Appeals] never would be called upon" to decide the issues. *In*

*re Bisys Securities Litigation*, 2005 WL 3078482, *2

(S.D.N.Y.2005). Thus, I do not see fit to burden the Court of

Appeals with this matter at this stage of the litigation. *See,*

*e.g, National Asbestos Workers Medical Fund*, 71 F.Supp.2d at 149

("As federal courts encounter increasing numbers of suits

involving more complex questions of law and fact, the expenditure

of appellate court time and resources necessary to address

multiple appeals from a single case would be excessive. This is a

matter of particular concern given the limited number of

appellate court judges in relation to the continually growing

case load of the federal courts.").

Accordingly, defendants' motions to certify this Court's

August 31, 2005 Memorandum Opinion and Order for interlocutory

appeal are denied.

<u>Motion for Stay Pending Appeal</u>

Because defendants' motions to certify the August 31, 2005

Memorandum Opinion and Order for interlocutory appeal are denied,

the motions for stay pending appeal are moot and are accordingly

denied.

**CONCLUSION**

For the reasons set forth above, defendants' motions to

certify this Court's August 31, 2005 Memorandum Opinion and Order

for interlocutory appeal and for stay pending appeal are denied.

The Clerk is directed to transmit a copy of this opinion to

all parties and the magistrate judge.

SO ORDERED.

Dated :   Brooklyn, New York
          July 18, 2006


                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge